## Jent's Executors, et al. v. Dodson, et al.

(Decided May 24, 1927.)

### Appeal from Allen Circuit Court.

1. Husband and Wife.—Wife may give her husband any personal property she owns.

2. Husband and Wife.—Where husband admits having acquired possession of personal property belonging to his wife during marriage

relation and asserts that it was gift to him, burden is upon him to establish fact of gift.

3.  Witnesses.—Deposition of devisees under will, consisting wholly of conversations had between them with deceased testator, held properly excluded under Civil Code of Practice, section 606, forbidding any person to testify for himself concerning any verbal statement of person who is dead at time testimony is offered.

4.  Husband and Wife.—That, upon collecting check drawn payable to husband, he immediately came into possession of his wife's half of its proceeds and that wife knew it, would not be sufficient to establish fact of gift of wife's half to husband.

5.  Husband and Wife.—In action by devisees against executors and against husband individually to cause them to account for money alleged to have been personal property of wife at time of her death, evidence held not sufficient to establish fact that wife gave husband her half of proceeds of oil and gas lease on land which she and husband owned as joint owners.

RODES & HARLIN and A. J. OLIVER for appellants.

W. D. GILLIAM for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellant H. B. Jent is the surviving husband of Mary A. Jent, who died testate in Allen county, Ky., in 1924. He and O. S. Guy are the executors of her will. Prior to her death Mr. and Mrs. Jent were the joint owners of 60 acres of land in Allen county, each owning an undivided one-half interest therein. The appellees here, Alice Dodson and others, are four of the five residuary devisees under Mrs. Jent's will. They instituted this action in equity against O. S. Guy and H. B. Jent, as the executors of the will of Mary A. Jent, and H. B. Jent, individually, to cause them to account for $2,400 alleged to have been the personal property of Mary A. Jent at the time of her death, four-fifths of which they were entitled to receive under the residuary clause of her will. It was alleged that before her death she and her husband leased for oil and gas purposes the 60-acre tract of land for which they were paid $4,500 bonus and from which they received $300 in rentals, all of which H. B. Jent appropriated to his own use and for her one-half of which he had never accounted. The answer for the executors denied that the $2,400 or any part of it had ever come to their hands, and for himself H. B. Jent admitted that while he and his wife owned the land they received $4,500

for the lease, and $300 rentals, and affirmatively pleaded that she gave it to him, and that therefore he was not liable to appellees for any part of it. The chancellor adjudged that appellees were entitled to the relief sought, and the executors, and H. B. Jent, individually, have appealed.

It is unquestionably true that a wife may give her husband any personal property she owns. See Barbee v. Harvey, Adm'r, 214 Ky. 461, 283 S. W. 442 and the authorities therein cited. The rule is well settled in Kentucky that where the surviving husband admits having acquired possession of personal property belonging to his wife during the marriage relation, and asserts that it was a gift to him the burden is upon him to establish the fact of the gift.

On that question, in Buckel v. Smith's Adm'r, 82 S. W. 235, 26 Ky. Law Rep. 494, it was said:

"But it must be borne in mind that the fact of gift must be established first. Whether it is a voluntary act of the giver is the feature which the court scrutinizes suspiciously. While the act of March 15th, 1894, commonly called the 'Weissinger Act (Acts 1894, c. 76),' enlarges the married women's property rights so as to place married and single women on the same footing in many respects, it does not, and cannot, charge the relation of confidence existing between husband and wife. Trust and affection and unity of interest continue to afford exceptional opportunities for one to have great influence over the other. The very nature of the relation is one of extreme mutual confidence. Its privacy from others, and its intimacy between the parties, give to the survivor upon the death of the other an opportunity to claim benefits from the relation, as regards property belonging to the deceased spouse, never contemplated by the parties, and not justified, in many instances, by the facts.

"To place the onus upon the heir at law of the deceased to prove that the possession of the survivor was not a gift, where a gift may be made by word of mouth and manual delivery, would be frequently impossible, and nearly always so. The safer rule is to require the one claiming the gift to establish that fact by satisfactory and competent evidence.

In this no hardship can be worked, because it is easy and simple to make plain always the fact of gift while both parties are alive and present at the transaction.''

The rule above announced and adhered to by this court seems to be in accord with the great weight of authority. The following from 13 R. C. L. p. 1387, section 437, seems to state correctly the general rule declared by the great weight of authority in this country:

"It was firmly established at an early day that a wife could make a valid gift of her separate estate to her husband; and it has been held that a statute prohibiting a sale by a wife of her separate property to her husband does not prevent a gift of it to him. A woman may permit her husband to have the possession of her separate property without giving it to him or subjecting it to the claims of his creditors. Where a wife's separate property comes into the hands of her husband from her or others acting for her, the law will not presume that it was a gift to him, but the burden is on him to establish that it was a gift. As said by the federal Supreme Court. 'Whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him.' "

The federal Supreme Court utterance is from Stickney v. Stickney, 131 U. S. 227, 9 S. Ct. 677, 33 L. Ed. 136. 30 C. J. p. 408, writes the general rule thus:

"The question is frequently presented as to whether a gift from the wife to the husband will be presumed where the husband receives the wife's property without an agreement to repay or return it or to hold it in trust. A presumption of a gift does not arise from the mere fact that the husband receives, or acquires possession of, the separate property of the wife, either with or without her consent.''

Bearing the foregoing principles of law in mind, and approaching the question presented by this appeal in their light, we find no facts presented by competent evidence that shed very much light upon it further than the facts above indicated, admitted by the pleadings. W. W.

Christian, who purchased the oil and gas lease from Mr. and Mrs. Jent, has testified that on February 24, 1920, he took the lease; that he and Mr. and Mrs. Jent were present in the office of an attorney at the time; that the lease was prepared by the attorney and signed and acknowledged by Mr. and Mrs. Jent before a notary public there; that the lease was delivered to him; that he paid $4,500 for it, giving a check for that sum made payable to H. B. Jent; and that subsequently he deposited $300 in the Allen County National Bank to the credit of Mr. Jent in settlement of one year's rental due under the lease for failure to drill. It does not appear from his testimony that Mrs. Jent knew when the check was written and delivered that it was made payable to Mr. Jent, or that either of them said anything about how or to whom the check should be made payable. It does not appear what disposition was made of the check received by Mr. Jent, whether he deposited it all to his credit or half to the credit of himself and half to that of his wife, or whether he received cash on the check when it was presented for payment.

The depositions of the four appellees were taken, but the chancellor sustained exceptions to their testimony. This was proper, because it consisted wholly of conversations had by them with deceased, Mary A. Jent; and section 606 of our Civil Code forbids any person to testify for himself concerning any verbal statements of a person who is dead at the time the testimony is offered.

Mary A. Jent's will in evidence does not substantiate appellant's claim that she had given him the $2,400. By it she disposed of all her real estate. She made specific devises of certain named articles of household and kitchen furniture. She made specific devises of sums of money to certain named persons. The residuary clause of her will reads:

> "All the rest of my personal property of whatsoever kind I will as follows: I will and bequeath said balance of my personal property share and share alike to the following five: To my sister Nannie one-fifth of said balance; to my sister Alice one-fifth of said balance; to my brother Carlisle one-fifth of said balance; to my brother Marvin one-fifth of said balance; and to my beloved husband, Hubert, one-fifth of said balance."

Consequently, there is nothing to be found in the will to establish the fact that before it was written, or before her death, she had given her husband, H. B. Jent, the $2,400 in controversy herein.

Appellants insist that the testimony of O. S. Guy and Dr. H. M. Meredith establish the fact of the gift. They rely upon the following quoted from the testimony of O. S. Guy:

"Q. When you went there to write her will, tell the court what you said to her about writing her will and what she said to you? A. When I arrived— Dr. Meredith and I arrived about the same time, went in together I think—well, during the writing of the will I asked her what property she had. She answered, 'My interest in the place here and the farm across the road and some money in the bank.' She said her money was in two banks in Scottsville. I asked her how much money she had, and she said about $1,000 in the People's State Bank and a little amount in the Farmers' Bank; she said she didn't remember just how much. (Exception.)

"Q. Did she tell you whether or not this money in the banks was subject to check or on time deposit? A. She didn't say."

The testimony of Dr. Meredith is very similar to that of Mr. Guy, except that he nowhere stated the amount of money Mrs. Jent told him that she had in bank. The argument for appellant is that this testimony establishes that when testatrix made her will she made no claim to ownership of the $2,400 in controversy, and that therefore it establishes that she had given it to her husband. The evidence of these two witnesses discloses that testatrix had concluded for herself how and to whom she would devise her property and that the will written for her was in accordance with her own preconceived desires. According to her plan of disposing of her property as disclosed by the will, since, aside from certain devises of specific personal property, she disposed of her personal estate by a residuary clause, there was no occasion for those preparing her will to inquire of her what personal estate she owned or for her to disclose the extent thereof to her inquisitors. We are left in total darkness as to when appellant claims his wife gave him the $2,400 in controversy. For aught that appears in evidence, the alleged gift may have been made subsequent to the mak-

ing of the will. It might be inferred from the fact that the check was drawn payable to Mr. Jent that upon collecting it he immediately came into possession of Mrs. Jent's half of its proceeds. Concede that to be true, and concede that she knew it, that is not sufficient, as we have seen, to establish the fact of the gift. Though her husband had possession of her $2,400, the relation of mutual confidence and trust existing would have forbidden her to question his motive or to doubt that he would account to her at any time she might need or call for it. Likewise when unnecessarily questioned as to the extent of her estate, she may have been induced by the same feeling of trust and confidence in the honor and integrity of her husband to say nothing about the fact that he had $2,400 of her money, knowing that he would be one of the executors of her will and that he had full knowledge that he had $2,400 of her money that she had never given him. If Mrs. Jent intended to give Mr. Jent the $2,400, it would have been easy to have the fact so witnessed as to be unquestionable.

Assuming that the chancellor erred in sustaining the exceptions to the testimony of O. S. Guy, taking it into account, and giving it and the testimony of Dr. Meredith the full weight to which it is entitled, the court is constrained to the view that it is not sufficient to establish the fact that Mrs. Jent gave the $2,400 in controversy to her husband. Having admitted that he received $2,400 of Mrs. Jent's money, and having sought to avoid accounting for it upon the ground that she had given it to him, the burden was clearly on him to establish that fact. Failure of proof to establish that essential fact is fatal to appellants' contentions herein, and the chancellor properly so adjudged.

For the reasons indicated, the judgment herein is affirmed.